## JAMES DANA *vs.* PRESIDENT, DIRECTORS, &c. OF THE MIDDLESEX BANK.

A grantor made a deed of bargain and sale of land, describing it by metes and bounds, and as bounded on one side by a street, and also as being " the same that was set off to W.:" The land set off to W. did not extend to the street, and the grantor was not seized of any land besides that which had been so set off. *Held,* that the land which the deed purported to convey was truly described by the metes and bounds referred to, and that this description was not controlled by the subsequent reference to the land set off to W.

THIS was an action to recover damages for alleged breaches of covenants contained in a deed of bargain and sale in the usual form, made by the defendants to the plaintiff, on the 11th of September 1841.    The declaration alleged a breach of the covenant· of seizin, as to a part of the land described in the deed, and a breach of the covenant against incumbrances, by reason of a right of way over another part of the land.

The defendants' deed to the plaintiff thus described two pieces of land in Charlestown:*   " The first piece, beginning at the westerly corner thereof, on a new street leading from Bunker Hill Street to Mystic River, called Cook Street, 306 feet northeasterly from Bunker Hill Street ; thence running southeasterly, as the fence now stands, 174 feet, to land of Larkin's heirs ; thence northeasterly, on said land of Larkin's heirs.

* Sketch of the land described in the deed to the plaintiff.

N.

Mystic River.

Flats.

G. Cook.

Street mentioned in deed to the | plaintiff.

2d Piece.

Street on Perham's plan, but | not laid out.

W.     Cook Street.     E. Larkin.

1st Piece

G. Cook.

S.

285 feet, *to a new street laid out by the town of Charlestown;* thence northwesterly, on said street, 174 feet, to said Cook Street; thence southwesterly, on said Cook Street, 274 feet, to the point of beginning : The other piece beginning at the southerly corner, on land of Larkin's heirs, and running northwesterly, *by said new street*, 87 feet, to land of George Cook ; thence northeasterly, parallel with the line of Larkin's land, 91 feet, more or less, to Mystic River ; thence south-easterly, by the river, 87 feet, to land of Larkin's heirs ; thence southwesterly, by said land of Larkin's heirs, 87 feet, to the corner begun at; with the flats below said land ; the two mentioned lots *being the same set off to the representatives of the late William S. Cook, deceased, on the division of the estate of Enoch Cook, deceased,* recorded with Middlesex probate records, b. 177, p. 97, or however either of said pieces of land may be bounded or described, be the boundaries thereof more or less, with all the privileges and appurtenances to the same belonging ; the said pieces of land being a portion of the estate conveyed in mortgage by William S. Cook, in his life time, to said Middlesex Bank, as per deed dated October 9th A. D. 1832, and recorded," &c., "and also being a part of the estate conveyed to said bank by James C. Merrill, administrator of the estate of said William S. Cook, as per deed, dated the 30th of March 1839, and recorded with said Middlesex deeds."

At the trial before *Dewey,* J. it appeared that the defendants acquired their title to the two pieces of land conveyed by them to the plaintiff, as follows: 1st, by a mortgage deed, made to them by William S. Cook, of his undivided share in the real estate of his deceased father, Enoch Cook ; 2d, by a division of the real estate of said Enoch among his heirs, made in 1836, after the death of said William S., in which division the said land was assigned to the representatives (three minor children) of said William S., subject to the mortgage to the defendants, who agreed to such division, and were to hold in mortgage the land so assigned, as they had held the undivided share of said William S. ; 3d, by a deed

of James C. Merrill, administrator of the estate of said William S. Cook, who sold to the defendants, by license of the probate court, the right in equity of redeeming said mortgaged land, and conveyed the same to them on the 30th of March 1839.

In the aforesaid division of the real estate of Enoch Cook, the first of the said two pieces was described in the same manner as in the defendants' deed to the plaintiff, except as follows ' Instead of the words " to a new street laid out by the town of Charlestown," were the words " to a street about to be laid out by the selectmen, of 50 feet in width, laid down on a plan made by B. F. Perham, intersecting Cook Street, and which, for convenience in description, we call New Street," and after the last words of description, adopted in the defendants' deed, was this addition : " With the buildings thereon, and one half of said Cook and New Streets, so far as the land measures on said streets, and the free use in common of passing and repassing in said streets, the whole length thereof."

The second of said pieces of land was described, in said division, as " beginning at the southerly corner, on land of said Larkin's heirs, and 50 feet northeasterly from the easterly corner of the last described lot." The remainder of the description was the same as in the defendants' deed, as far as the words " flats below said land," where the following words were added, viz : " to low water mark, and half of the width of said Cook and New Streets, so far as said lot bounds thereon, with the free use of the whole of said Cook and New Streets, for the usual purposes of passing thereon in common with the other abutters."

The deed of James C. Merrill to the defendants described the first piece as it is described in their deed to the plaintiff, with these words added, viz : " with one half of the width of said Cook and New Streets, so far as the land measures on the same." It also described the second piece as it is described in the defendants' said deed, and added, after the words " flats below said land," the words " and one half the width of the streets bordering thereon." It also described both pieces as the same that were set off o the representatives of

William S. Cook, on the division of the estate of Enoch Cook, and as "subject to sundry mortgages, and the widow's dower, and conveyed subject to the same, and all other incumbrances, if any, existing thereon."

The defendants contended that, upon the proper construction of their deed to the plaintiff, it did not purport to convey or warrant to the plaintiff any land besides what was included in the premises set off as the distributive share of William S. Cook. The plaintiff contended that the deed, upon a proper construction, purported to convey and warrant to him all the land that could be included by a boundary, set forth in the deed as "a new street laid out by the town of Charlestown," which was shown to be Medford Street, laid out by the selectmen, and accepted by the town on the 27th of March 1837. It was also shown that New Street, mentioned in the assignment to William S. Cook's representatives as "a street about to be laid out by the selectmen," was never so laid out. The plaintiff then proceeded to show that the land set off to William S. Cook's representatives did not extend so far north as Medford Street, but fell short thereof thirty seven feet.

The judge ruled that the proper construction of the defendants' deed was, that it purported to convey and warrant a tract of land extending to "a new street laid out by the selectmen of Charlestown," and that the covenants in the deed were not restricted to so much land only as was "set off to the representatives of William S. Cook, on the division of the estate of Enoch Cook." And the jury were instructed that if they found, as to any part of the land embraced in the deed to the plaintiff, under the above construction, the defendants were not seized, there was a breach of their covenant of seizin.

The defendants did not deny that, if they were liable on their covenant of seizin, they were also liable on their covenant against incumbrances, inasmuch as a right of passage over the land called New Street was given to George Cook in the division of the estate of Enoch Cook.

The jury found a verdict for the plaintiff. New trial to be granted, if the above ruling was wrong.

*Buttrick,* for the defendants.

*Farley & J. Dana,* for the plaintiff.

WILDE, J. We have no doubt that the ruling of the judge and his instructions to the jury, in this case, were correct. The question was, whether the land conveyed by the defendants to the plaintiff was truly described by the metes and bounds referred to in the deed, or whether this description may be controlled by a subsequent reference to the land set off to William S. Cook, (from whom the defendants derived their title,) as his distributive share of the estate of Enoch Cook. It is a case of double description, and the rule of construction in such cases has been frequently considered, and it is now fully settled, that the description by metes and bounds is to prevail, although a different description is given by reference to the grantor's title deeds. *Crosby* v. *Bradbury,* 2 Appleton, 61. *Melvin* v. *Proprietors of Locks and Canals,* 5 Met. 15. *Drinkwater* v. *Sawyer,* 7 Greenl. 366.

It has been said, and probably said truly, that there was a mistake in the description by metes and bounds. But who is to suffer by that mistake ? Certainly not the plaintiff. He was not bound to ascertain whether the description in his deed from the defendants agreed with the description of the land set off to William S. Cook ; for the description is clear and certain. The land conveyed was expressly bounded by a new street ; and when it is added that the land conveyed is the same lot which was set off to William S. Cook, that is equivalent to a covenant or averment, on the part of the defendants, that the lot thus set off did in fact extend to the new street. And there can be no question that the plaintiff purchased and paid for the land contained in the description. The defence, therefore, is not sustained by any principle of law or justice. The defendants sold and conveyed to the plaintiff the land to which they supposed they had a good title, and it turns out that as to a part of it they had not. They are therefore bound to indemnify the plaintiff, for they covenanted that they were seized of the land described.

*Judgment on the verdict.*